William David

v.

The People of the State of Illinois.

*Opinion filed October 26, 1903.*

1. Incest—*consent of female not essential to crime of incest.* Consent of the female is not essential to constitute the crime of incest in the male.

2. Criminal law—*correct practice for requiring election.* In a prosecution for incest, if the accused desires the State to elect which of the occurrences testified to it will rely upon for conviction, he should move the court to require an election, when, if the motion is overruled, he may except and preserve the question for review.

3. Same—*court cannot, by instruction, make an election for the State.* It is not error in a trial for incest to refuse an instruction asked by the accused which informs the jury that the prosecution can rely upon but a certain one of the occurrences testified to by the prosecutrix.

Writ of Error to the Circuit Court of Iroquois county; the Hon. George W. Brown, Judge, presiding.

This is an indictment returned on November 15, 1902, in the circuit court of Iroquois county, charging plaintiff in error, in three counts, with the crime of incest on October 18, 1902, with his niece, Belle L. Price. Two trials have been had, and in each the jury have found plaintiff in error guilty. A new trial was granted by the court in the first instance and was denied in the second. Plaintiff in error was sentenced to the penitentiary, and brings his cause to this court.

Belle L. Price, the niece with whom he is charged to have committed this crime, is a girl fourteen years of age on July 9, 1902. She and plaintiff in error had lived with the mother of plaintiff in error, who was also the grandmother of the girl, for about a year prior to the time when the crime is alleged to have been committed. The girl did chores and went to school, while plaintiff in error worked in the fields and performed other necessary work upon the farm. The testimony of the niece tends

to show that plaintiff in error had sexual intercourse
with her on three distinct occasions, each on Saturday,
the first time in the barn, the second time in the house,
and the third time, on October 18, 1902, in Hizer's woods
near the house.   Her testimony concerning the first two
acts of intercourse is not corroborated by any other wit-
ness.   She testified that the occurrence in the barn took
place about two or three weeks before October 18; that
she had gone up in the hay-mow of the barn to throw
down hay to the horses, and that while she was there
the plaintiff in error came up, took hold of her, threw her
down and committed fornication with her; that this was
the first time she had ever had sexual intercourse; that
she does not remember that he hurt her or that she made
any outcry; that there were no blood-stains on her cloth-
ing or person when she left the barn; that she said noth-
ing to any one about this and continued in school the
same as usual; that she does not remember of offering
any resistance or of trying to prevent him from accom-
plishing his purpose.   The occurrence in the house, ac-
cording to her testimony, took place one week later than
that in the barn.  She testified that she went up-stairs to
her room, and that soon afterwards the plaintiff in error
came up, took hold of her and carried her to his room,
where he again had sexual intercourse with her; that at
this time her grandmother was away from home; that she
did not try to push him away, because he held her; that
she told no one about this, and does not remember that
he hurt her.  Plaintiff in-error denied both of these occur-
rences, and introduced several witnesses to prove that
on Saturday, October 11, during the entire afternoon he
was not on or near the premises on which they lived.

    The testimony of the niece as to the occurrence on
October 18 tends to show that she was sent by her grand-
mother to Hizer's woods, about forty rods from the house,
immediately after dinner, to drive some cows and colts
into a pasture from which they had escaped; that she

left plaintiff in error at the house; that after she had driven the cows out she returned for the colts, and that plaintiff in error followed her into the woods, overtook her, threw her down, unbuttoned her clothes and again had sexual intercourse with her; that while they were in the act four men approached, and that plaintiff in error jumped up and walked off fast through the woods, while she got up, went behind a tree or stump and fastened her clothes; that she then started for the house, but the men called to her, stopped her, asked her name and that of the man who was with her, and that she told them it was her uncle, William David. She further testified that she did not remember that he hurt her, nor that she resisted him or tried to prevent him from performing the act; that she told no one of this occurrence until the following Monday, when her father and mother called at school, asked her about it and took her home. Two of the four men referred to by the witness in her testimony, namely, Webster and Malone, testified that they were in Hizer's woods hunting, and saw a man lying on the ground about two hundred feet away; that he got up and appeared to be buttoning his pants and walked away; that they then saw the girl get up from the same place and go behind a tree or stump. Webster testified that the man's pants were open and his privates out; that he had been acquainted with the man for several years, and that it was William David. Malone testified that they called to the girl, stopped her, asked the name of the man and her name; that she said her name was Belle Price, and that the man was her uncle, William David. Both testified that she then went to the house and that soon afterwards they saw and talked with plaintiff in error. Plaintiff in error denied this whole occurrence, and testified that he did not see his niece after she left the house to drive the cows out of the woods; that he staid at the house until he hitched up his horses and drove down in the field, where he met the four men. In

204—31

this he is corroborated by his mother, from whose testimony it appears that she was with him during the entire time from dinner until he left with his horses for the field, and that Belle Price had returned to the house before plaintiff in error left it; that the four men came to her house for a drink, and that plaintiff in error had then only been gone long enough to reach the woods; that the cattle had been brought back into the pasture before he started, and that she saw the girl back around the house before he went back to the field.

Testimony of Belle Price given on the former trial of the case was read in evidence on the part of the accused, in which she stated that she tried to prevent this occurrence in the woods, as well as the two earlier occurrences; that she never consented, and that she tried on each occasion to put him away and prevent the act with all her might and strength. Witnesses were introduced who testified that Webster had made statements to them out of court that he did not see plaintiff in error with his niece in the woods on that occasion. A physician testified that he had examined Belle Price some time in December, just before the first trial, with the view of ascertaining whether or not she had had sexual intercourse, and that he found conditions from which he formed the opinion that she had. A large number of witnesses were introduced on behalf of the State, who testified that the general reputation of the plaintiff in error for truth and veracity was bad. Other testimony was offered which tended to show that the testimony of the mother tending to establish an alibi for William David as to the transaction in Hizer's woods was untrue.

DONOVAN & SHIELDS, and PAYSON & KESSLER, for plaintiff in error:

Incest can only be committed by the concurrent act of two persons of opposite sexes, and the assent or concurrence of the one is as essential to the commission of

the offense as that of the other. *People* v. *Jenness*, 5 Mich. 305; *DeGroat* v. *People*, 39 id. 124.

The crime of incest can be committed only by two willing parties. *Noble* v. *State*, 22 Ohio St. 541.

Consent excludes rape. Rape and incest have a distinct element of criminality. The use of force is criminal, but this criminality is essentially different from the corruption of the mind of the other party where force is wanting. *State* v. *Thomas*, 53 Iowa, 214.

The crime of incest involves mutual consent to the illicit relation. There can be no conviction of one without the guilt of the other is proved. *State* v. *Ellis*, 74 Mo. 385; 2 McClain on Crim. Law, sec. 1121; *Delany* v. *People*, 10 Mich. 241; *People* v. *Skutt*, 96 id. 449; *People* v. *Patterson*, 102 Cal. 239; *Banmer* v. *State*, 49 Ind. 544; *State* v. *Wenther*, 76 Wis. 89; *Yeoman* v. *State*, 21 Neb. 171; *People* v. *Horriden*, 1 Park. Cr. 344; *State* v. *Jarvis*, 20 Ore. 437; *State* v. *Lingle*, 128 Mo. 528; *Raiford* v. *State*, 68 Ga. 672; *State* v. *Woolover*, 77 Mo. 103; *State* v. *Strattman*, 100 id. 540.

H. J. HAMLIN, Attorney General, and J. W. KERN, State's Attorney, for the People:

The assent of both parties is not essential to constitute the crime of incest. *Smith* v. *State*, 108 Ala. 1; *State* v. *Chambers*, 87 Iowa, 1; *Commonwealth* v. *Bakeman*, 131 Mass. 577; *Freeman* v. *State*, 11 Tex. App. 92; *Schoenfeldt* v. *State*, 30 id. 695; *People* v. *Gleason*, 90 Cal. 359; *Powers* v. *State*, 44 Ga. 209; *Raiford* v. *State*, 68 id. 607.

That the act also constitutes rape does not prevent its being incest. *State* v. *Chambers*, 87 Iowa, 1; *People* v. *Gleason*, 99 Cal. 359; *Commonwealth* v. *Bakeman*, 131 Mass. 577; *Smith* v. *State*, 108 Ala. 1; Hughes on Crim. Law and Pr. sec. 2095; Bishop on Stat. Crimes, sec. 660.

A woman who consents to the crime of incest knowingly, voluntarily and with the same intent which actuated the man, is his accomplice; otherwise if she was the victim of force, threats, fraud or undue influence.

*Stewart* v. *State*, 35 Tex. Crim. 174; *Sheely* v. *State*, 95 Tenn. 152; *Smith* v. *State*, 108 Ala. 1.

Evidence of different acts of intercourse is admissible. *Bolen* v. *People*, 184 Ill. 338; 2 McLain on Crim. Law, sec. 1124; Hughes on Crim. Law and Pr. sec. 2087.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Plaintiff in error complains that the verdict is not sustained by the evidence. With this contention we can not agree. The case has been twice tried. The prosecutrix testified on both trials. A transcript of her testimony given on the first trial was offered and read in evidence on the second trial. Her testimony on each trial contains many contradictions and inconsistencies in reference to immaterial matters, but upon the material contested questions, namely, did some man have sexual intercourse with her in Hizer's woods, and was that man William David, her testimony is unequivocal and consistent with her statements made upon being detected in the criminal act and with other facts and circumstances proven on the trial in reference to what took place in these woods, and she is amply corroborated by Webster, and to some extent by Malone. Opposed to this testimony was that of the defendant, corroborated, so far as the alibi set up by him is concerned, by the testimony of his mother. Evidence was offered tending to impeach the truth and veracity of the accused, his mother and Webster. It was peculiarly the province of the jury to determine whether or not the testimony was sufficient to establish the guilt of the defendant beyond a reasonable doubt. With their conclusion, under the evidence in this case, we will not interfere.

It is also argued that the testimony in the cause tends to show that rape was committed, and the court below was asked by the accused to instruct the jury that in order to constitute the crime of incest it is essential the proof should show that the "sexual intercourse is ac-

complished without force by the defendant and with the consent of the prosecuting witness." This instruction was refused.

Our statute provides that "persons within the degrees of consanguinity within which marriages are declared by law to be incestuous and void, who shall intermarry with each other, or who shall commit adultery or fornication with each other, or who shall lewdly and lasciviously co-habit with each other, shall be imprisoned in the penitentiary not exceeding ten years," and the instruction offered is based on the theory that the crime of incest, under the statute, is a joint one, requiring the consent of both parties to the fornication, and that where the act is accomplished by force and without the consent of the female the male is guilty of rape and not of incest, and stress is put upon the fact that the statute is in the plural, and against persons who commit fornication "with each other." Incest, as it is made punishable in the various States of the Union, is defined by statutes. Some apparent conflict in the authorities grows out of the fact that there is a variance in the several statutes on this subject; but there is a hopeless conflict in adjudicated cases which have been determined by the courts of last resort in States having statutes defining incest in substantially the same words as are used in our statute. In *DeGroat* v. *People*, 39 Mich. 124, *State* v. *Jarvis*, 20 Ore. 437, and *Yeoman* v. *State*, 21 Neb. 171, under statutes almost identical in words and identical in meaning with our own, it was held that the crime of rape by forcible ravishment and incest cannot be committed by the same act, but that of incest requires the concurring assent of both parties. To the same effect are other cases decided by the courts of other States under statutes differing somewhat from our own. On the other hand, under statutes in substance precisely as that of Illinois, it has been held in *Smith* v. *State*, 108 Ala. 1, *People* v. *Kaiser*, 119 Cal. 456, and *State* v. *Nugent*, 20 Wash. 522, that where the

parties to sexual intercourse are within the prohibited degrees, the male may be convicted of incest even though he accomplish the act by force and without the consent of the female. In Iowa the language in the statute is as follows: "Or if any person being within the degrees of consanguinity or affinity in which marriages are prohibited by this section, carnally know each other they shall be deemed guilty of incest." In *State* v. *Hurd*, 101 Iowa, 391, this question arose under the Iowa statute above quoted, and although the language of the statute requires carnal knowledge by each of the other, the court in that case determined that the consent of the female is not necessary to constitute the crime of incest in the male, and held that in the earlier Iowa case of *State* v. *Thomas*, 53 Iowa, 214, which is relied upon by the Oregon court in the case of *State* v. *Jarvis*, *supra*, the question here presented did not properly arise.

In our judgment the better reasoning supports the conclusion that the consent of the female is not necessary to constitute the crime of incest by the male. It is true that our statute is written in the plural, but the third paragraph of section 1 of chapter 131 (Hurd's Stat. 1901,) provides that "words importing the singular number may extend and be applied to several persons or things, and words importing the plural number may include the singular," so that no violence is done to the language of the section denouncing incest by holding that it applies to any person who shall have sexual intercourse with another who is within the prohibited degrees. The things which the law is intended to punish are the purpose and desire to have, and the act of having, sexual intercourse with another who is related to the first as specified in the statute. The mind of the male is equally criminal and his act equally deplorable, unnatural and detestable whether the female consents or not. The fact that she consents adds nothing to his moral and legal turpitude. It is his intent and his act

that the law punishes him for.  It was not intended to punish him because she consented to the fornication, but because he desired and participated therein.  Nor is the persuasion or enticement of the female by the male an element of the crime, because she is equally guilty with him if she consents, however reluctantly and no matter under what persuasion or inducement, to the fornication, and his legal guilt would not be the less if she should entice and persuade him to join her in the commission of this crime.

The accused asked and the court refused the follow-ing instruction:

"You are instructed by the court that the prosecution can rely upon but one act of intercourse in this case for the purpose of asking a conviction, and that is, the one that is alleged to have occurred in the Hizer woods on the 18th day of October, A. D. 1902."

This action of the court is said to have been preju-dicial to the defendant below, for the reason that the prosecutrix testified that William David had had sexual intercourse with her on two earlier occasions, and it is suggested that the refusal of the court to give this in-struction left the jury free to convict the defendant on account of the girl's testimony in reference to the earlier occurrences, and amounts to putting him on trial for two or more felonies at the same time.  We have carefully examined this record, including the instructions given, and are satisfied from this examination that the jury understood that the charge upon which the prosecution sought a conviction and upon which they were trying the defendant was that of having committed incest in the Hizer woods on the later occasion.  If, however, the accused desired to have the court require the prosecu-tion to elect of record which of the occurrences testified to by the prosecuting witness the People would rely upon in seeking a conviction, the proper practice was to move that the court require an election, and if this mo-

tion was overruled, the propriety of requiring an election could then be presented to this court in the event of a conviction below. The court could not, by an instruction, make an election for the prosecuting officer. In the refusal of this instruction there was, therefore, no error.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*