130 Nev., Advance Opinion 31

# IN THE SUPREME COURT OF THE STATE OF NEVADA

DELBERT ROY DOUGLAS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 59084

**FILED**

MAY 0 1 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from judgment of conviction for sexual assault and incest. Eighth Judicial District Court, Clark County; David B. Barker, Judge.

*Affirmed.*

Philip J. Kohn, Public Defender, and P. David Westbrook, Deputy Public Defender, Clark County,
for Appellant.

Catherine Cortez Masto, Attorney General, Carson City; Stephen B. Wolfson, District Attorney, Jonathan E. VanBoskerck, Chief Deputy District Attorney, and Ryan J. MacDonald, Deputy District Attorney, Clark County,
for Respondent.

BEFORE THE COURT EN BANC.

## OPINION

By the Court, PICKERING, J.:

Delbert Roy Douglas fathered two children with his daughter, whom he forced to have sex with him when she was 12 and, again, after

she turned 18. He was charged with and convicted of sexual assault and incest for both rapes. On appeal, Douglas challenges his incest convictions. He argues that incest requires mutual consent while sexual assault is, by definition, nonconsensual, making the two crimes mutually exclusive. We hold, as the majority of courts have held, that incest condemns sex between close relatives without regard to whether the intercourse was consensual.

I.

A.

Our review is de novo, *State v. Lucero*, 127 Nev. ___, ___, 249 P.3d 1226, 1228 (2011), and begins with the text of Nevada's incest statute:

> Persons being within the degree of consanguinity within which marriages are declared by law to be incestuous and void who intermarry with each other or who commit fornication or adultery with each other shall be punished for a category A felony by imprisonment in the state prison . . . .

NRS 201.180.

Obviously, NRS 201.180 omits any express mutual consent requirement. But Douglas parses the statute as punishing "[p]ersons being within the degree of consanguinity within which marriages are declared by law to be incestuous and void . . . who *commit fornication . . . with each other*" and infers a mutual consent requirement from its key terms: *persons, commit, fornication,* and *with each other.* "Unlike sexual assault," Douglas argues, "incest is not a crime perpetrated by *one* person against another; it is the joint operation of two or more prohibited *persons* who, *together*, 'commit fornication.'" And "fornication," Douglas continues, means "'consensual sexual

intercourse between two persons not married to each other.'" *Id.* at 8 & n.2 (quoting *Merriam-Webster's Online Dictionary,* http://www.merriam-webster.com/dictionary/fornication (last visited, July 20, 2012)).

Nevada's prohibition on incest dates back to 1861. 1861 Laws of the Territory of Nevada, ch. 28, § 129, at 83. Though the penalty has changed over time, *see* 1979 Nev. Stat., ch. 655, § 43, at 1429; 1995 Nev. Stat., ch. 443, § 83, at 1198; 2005 Nev. Stat., ch. 507, § 31, at 2877, the words used to describe incest's elements have not varied.[1] In general, "[w]ords must be given the meaning they had when the text was adopted." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 78 (2012). So, we look to references from the late 19th century to glean the meaning of NRS 201.180.

To Douglas, the phrase "with each other" unambiguously requires mutual consent. But 19th century scholarly references primarily defined *with* as in the "presence" or "company of." Rev. James Stormonth, *Dictionary of the English Language* 733 (1877); *see also* William Dwight Whitney, *The Century Dictionary* 6952 (1895) (defining *with* as "in company with"). Thus, "with each other" requires only that the charged party commit the act of incest in the company of the person with whom he

---

[1]Section 129 of the 1861 Laws of the Territory of Nevada criminalized incest in terms identical to NRS 201.180, except for the reference to the territorial as opposed to the state prison and the omission of five commas: "Persons being within the degrees of consanguinity, within which marriages are declared by law to be incestuous and void, who shall intermarry with each other, or who shall commit fornication or adultery with each other, shall, on conviction, be punished by imprisonment in the territorial prison . . . ." 1861 Laws of the Territory of Nevada, ch. 28, § 129, at 83.

or she intermarries or fornicates. The phrase is indeed unambiguous,[2] but it does not demand the consent of both parties to support a conviction.

Douglas also argues that the phrase "persons . . . who commit" requires mutual consent. We disagree. *Commit* is defined as "to do or effect," Stormonth, *supra*, at 99, or "to perpetrate." Whitney, *supra*, at 1131. Thus, the phrase "persons . . . who commit" sanctions punishment for those persons who voluntarily carry the incestuous act into execution, and prevents the prosecution of those who do not. This requirement shields rape victims and certain minors from prosecution for incest, but it does not demand mutual consent.

Nor do we agree that *fornication* signifies consensual sexual intercourse. Stormonth defines *fornication* as sexual intercourse "between unmarried persons." Stormonth, *supra*, at 215. Whitney similarly defines it as "illicit sexual intercourse on the part of an unmarried person with a person of the opposite sex, whether married or unmarried." Whitney, *supra*, at 2340. These early definitions focus on marital status of the participants, not consent.

Though helpful, historical dictionaries are not "perfect repositories." Note, *Looking It Up: Dictionaries and Statutory Interpretation*, 107 Harv. L. Rev. 1437, 1445, 1447 (1994). Douglas supports his reading of NRS 201.180 with *Merriam-Webster's Online Dictionary*, *supra*, which defines *fornication* as "consensual sexual intercourse." But other modern dictionaries do not include "consensual" in

---

[2]*See* 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 47:7, at 304 (7th ed. 2007) (explaining that a court's reliance on a dictionary to interpret language does not render that language ambiguous).

their definitions of fornication. *See, e.g.,* *Webster's Seventh New Collegiate Dictionary* 329 (1969). And Douglas's reference to the online dictionary provides no prefatory material, or information as to editor, year of publication, or depth, making it impossible to weigh his definition's relative credibility.

A more reliable modern resource is *Black's Law Dictionary.* *See Rugamas v. Eighth Judicial Dist. Court,* 129 Nev. ___, ___, 305 P.3d 887, 893 (2013). The definition of *fornication* offered by *Black's* is "voluntary sexual intercourse with an unmarried woman" or "[v]oluntary sexual intercourse between two unmarried persons." *Black's Law Dictionary* 679 (8th ed. 2009). These definitions mirror those provided by Stormonth and Whitney, except for *Black's* inclusion of the word *voluntary.* *See* Stormonth, *supra,* at 215; Whitney, *supra,* at 2340.

One definition of *voluntary* is "not impelled." *Black's Law Dictionary* 1605 (8th ed. 2009). Under that definition, *fornication* suggests mutual consent. But *voluntary* may also mean "by . . . intention." *Id.* Under this definition, a conviction for incestuous fornication requires an intentional act by the accused, like all crimes in Nevada. NRS 193.190 ("In every crime or public offense there must exist a union, or joint operation of act and intention . . . ."). But it would not demand mutual consent.

### B.

The majority of courts that have considered statutes like NRS 201.180 have refused to infer a mutual consent requirement. Most states passed statutes criminalizing incest by the late 1800s. Joel Prentiss Bishop, *Commentaries on the Law of Statutory Crimes* § 728, at 442 (2d ed. 1883). Although "[t]hese statutes [were] not precisely the same in all

states," they were "substantially so." William Lawrence Clark & William Lawrence Marshall, *A Treatise on the Law of Crimes* § 460, at 704 (2d ed. 1905). For the most part, these statutes were worded like NRS 201.180: They "punish[ed] any persons who, being within the degrees of consanguinity . . . within which marriages are declared to be incestuous and void, intermarry or commit adultery or fornication with each other." *Id.* By 1905, "in most states," it was the settled law that "the consent of both parties is not a necessary element of the offense" of incest. *Id.* at 705; Recent Case, *Incest—Elements of Offense—Relation of Parties*, 22 Yale L.J. 625 (1913) ("According to the weight of authority assent of both parties is not necessary to constitute the crime of incest."); L. S. Tellier, Annotation, *Consent as element of incest*, 36 A.L.R.2d 1299 (1954) ("While [incest] statutes generally forbid persons within specified degrees of consanguinity or affinity to have sexual intercourse 'with each other' or 'together,' in most jurisdictions the courts do not regard the words 'with each other' or 'together,' as requiring a mutual consent to the wrongful act in order that incest may be committed, the purpose of the statutes being to deter the commission of fornication or adultery with one within the prohibited degrees of relationship, and to punish the accused regardless of whether or not the other party consented to the act or whether or not force was used to overcome the other's resistance.").

Nevada appears to have copied its incest statute from California. *Compare* 1861 Laws of the Territory of Nevada, ch. 28, § 129, at 83, *reprinted supra* note 1, *with* 1850 Cal. Stat. 244 ("Persons being within the degrees of consanguinity, within which marriages are declared by law to be incestuous and void, who shall intermarry with each other, or who shall commit fornication or adultery with each other, shall, on

conviction, be punished by imprisonment in the State Prison . . . ."); *see also* 5 Nev. Compiled Laws § 10140 (1929) (citing Cal. Penal Code § 285, where 1850 Cal. Stat. 244 was eventually codified, as a resource for Nevada's incest statute). In *People v. Stratton*, 75 P. 166, 167 (1904), *superseded by statute on other grounds as stated in People v. Tobias*, 21 P.3d 758, 766 (Cal. 2001), the California Supreme Court considered and rejected the text-based mutual-consent arguments Douglas reprises here. In its view, such "reasoning does not commend itself" because it makes "mutuality of agreement and joint consent . . . the essence of the crime" in an improper judicial revision of the "express declaration of the [statutory] law." *Id.* Adding a mutual consent requirement to the statute disserves its purpose:

> The gravamen of the crime of incest, as of rape, is the unlawful carnal knowledge. In rape it is unlawful because accomplished by unlawful means. In incest it is unlawful, without regard to the means, because of consanguinity or affinity. Where both the circumstances of force and consanguinity are present, the object of the statute being to prohibit by punishment such sexual intercourse, it is not less incest because the element of rape is added, and it is not less rape because perpetrated upon a relative. In this, as in every offense, the guilt of the defendant is measured by his knowledge and intent, and not by the knowledge and intent of any other person.

*Id.*, *quoted with approval in State v. Hittson*, 254 P.2d 1063, 1065 (N.M. 1953); *see also* Tellier, *supra*, 36 A.L.R.2d at 1296 (reproducing *Hittson* as the lead case for the annotation).

Douglas suggests that the wording of Nevada's incest statute is unique and distinguishes the cases holding incest does not require mutual consent. But this is not accurate. Early cases abound, construing

SUPREME COURT
OF
NEVADA

(O) 1947A

7

incest statutes indistinguishable from Nevada's and rejecting the idea that incest requires mutual consent.

In *People v. Barnes*, 9 P. 532 (1886), for example, the Supreme Court of the Territory of Idaho considered Idaho's incest statute—a statute identical to Nevada's. *Compare id.* at 532 (reprinting 1875 Revised Laws of the Territory of Idaho, ch. 10, § 129, at 353), *with* 1861 Laws of the Territory of Nevada, ch. 28, § 129, at 83, *reprinted supra* note 1. In *Barnes*, the defendant tendered the same arguments about "fornication" and "with each other" requiring mutual consent that Douglas does. *Barnes*, 9 P. at 534. Quoting contemporary authorities, the Idaho Territorial Court noted that one defines "fornication" as "'the unlawful knowledge by an unmarried person of another,'" which "does not imply that carnal knowledge must necessarily be mutual," while the other "defines it to be 'the voluntary sexual intercourse of one person with another.'" *Id.* These definitions establish that the defendant must act volitionally but not that the intercourse must occur consensually. As the *Barnes* court rhetorically asks: "There must be a voluntary consent of the will on the part of the one, but may not the other party to the act be the victim of force or fraud, or a child so young that the law regards her incapable of giving consent?" *Id.* The *Barnes* court's conclusion that incest does not require mutual consent was not simply policy-based but text-based as well:

> The terms used in the statute are, "Persons being within the degrees of consanguinity," etc., "who shall commit fornication with each other." Evidently the term "fornication" is used in the ordinary common law meaning. *We have been unable to find any definition of that term in the common-law authorities which necessarily implies a consenting mind in both parties to the act.* It is

> maintained that the words "with each other," used in the statute, imply that the offense is committed only when both participants therein do so with a willing mind . . . . We are unable to adopt this construction. We are rather of the opinion that . . . neither the language of the statute, nor the true definition of the terms employed, imply that a mutuality of consent is necessary to constitute the crime of incest.

*Id.* at 534-35 (emphasis added).

Addressing statutes with the same wording as NRS 201.180 and coming to the same conclusion as *Stratton* and *Barnes* are: *McCaskill v. State*, 45 So. 843, 844-45 (Fla. 1908) ("The fact that the defendant, who had carnal intercourse with his daughter, used some force to overcome the resistance actually made by her, does not render the act the less incestuous."); *David v. People*, 68 N.E. 540, 542 (Ill. 1903) ("the consent of the female is not necessary to constitute the crime of incest by the male"); *Keeton v. State*, 549 So. 2d 960, 961 (Miss. 1989) ("If this Court has not before adopted, we here adopt the majority position that consent is not a necessary element of incest."); *Hittson*, 254 P.2d at 1065 ("[T]he purpose of the [incest] statute is to prevent sexual intercourse between close relatives, and the free act of the one being tried, with knowledge of the relationship, is all that is required. It is immaterial that the same testimony would have sustained a conviction for rape."); *Signs v. State*, 250 P. 938, 940 (Okla. Crim. App. 1926) ("incest is proved, although the female was incapable of and did not give her consent or voluntarily participate in the act of intercourse"); *State v. Nugent*, 56 P. 25, 26 (Wash. 1899) ("If it be true that both parties must be guilty or neither can be, then it must follow that if the female is under the age of consent, or an imbecile, the crime cannot be incest. We cannot subscribe to such a

doctrine. It is illogical, and in disregard of the fundamental principle that each must answer for the consequences of his own act, and his own guilt does not depend upon the conduct or mental condition of another.").

*DeGroat v. People*, 39 Mich. 124 (1878), on which Douglas relies, and *State v. Jarvis*, 26 P. 302 (Or. 1891), are the exceptions to the rule established by the cases just cited. They address statutes similar to NRS 201.180 and deem mutual consent an element of incest. But no court outside Michigan or Oregon has cited either decision approvingly since the end of the 19th century, while many have considered and rejected their holdings. *See Stratton*, 75 P. at 167 (*DeGroat* and *Jarvis* are products of "judicial construction" not proper statutory interpretation); *David*, 68 N.E. at 542-43 (rejecting *DeGroat* and *Jarvis*); *State v. Freddy*, 41 So. 436, 437-38 (La. 1906) (construing a differently worded statute but rejecting the rule in *DeGroat* and *Jarvis*; "the aim of the [incest] statute is to prevent the unnatural sexual intercourse, and this intercourse exists none the less if accomplished against the will of one of the parties, and the act is none the less incest because it happens also to be rape"); *Hittson*, 254 P.2d at 1064-65 (rejecting *DeGroat* and *Jarvis*); *Signs*, 250 P. at 940 (citing *DeGroat* and *Jarvis* as exceptions to the better-reasoned general rule); *State v. Winslow*, 85 P. 433, 435 (Utah 1906) (construing a differently worded statute but rejecting *DeGroat* and *Jarvis*; "the great weight of authority is to the effect that when the incestuous fornication is shown to have been committed by the defendant with full knowledge of the relationship between himself and the other participant, though he used force in the accomplishment of his object, he may, nevertheless, be convicted of the crime of incest"); *Nugent*, 56 P. at 26 (rejecting *DeGroat* and *Jarvis* as "illogical").

Two courts that started down the *DeGroat* and *Jarvis* path, *State v. Thomas*, 4 N.W. 908, 910 (Iowa 1880); *Noble v. State*, 22 Ohio St. 541, 545 (1872), considered statutes worded differently from NRS 201.180, and, more to the point, did not stay the course. *Thomas* was a 3-2 decision from which, to the extent it supported the mutual consent rule contended for here, the Iowa Supreme Court soon retreated. *See State v. Hurd*, 70 N.W. 613, 615 (Iowa 1897) ("'A person may be convicted of incest though he accomplish his purpose by such force as to render him also guilty of rape.'" (quoting headnote 1 to *Smith v. State*, 19 So. 306, 306 (Ala. 1896))); *see also State v. Chambers*, 53 N.W. 1090, 1092 (Iowa 1893) ("Guilt may exist and is none the less enormous, because the act was without the consent of the female. To hold otherwise is to say that the crime of incest cannot be committed with one who, from infancy or other cause, is incapable of consenting to the act."). And *Noble*'s passing reference to incest being "committed by two willing parties," 22 Ohio St. at 545, was later dismissed as dictum in *State v. Robinson*, 93 N.E. 623, 624 (Ohio 1910) ("The question whether consent is an essential ingredient of the crime [of incest] was not presented in the case of *Noble v. State*."). *See also id.* ("[I]n the great majority of states it is held that the consent of both parties is not essential, and that a defendant may be convicted of incest though he use such force as makes it rape. We think the better reason is with the majority.").[3]

---

[3]The decision in *People v. Harriden*, 1 Parker's Criminal Reports 344 (N.Y. 1852), has likewise failed the test of time. As noted in *People v. Wilson*, 135 N.Y.S.2d 893 (Nassau Cnty. Ct. 1952), *Harriden* was effectively overruled by *People v. Gibson*, 93 N.E.2d 827, 828 (N.Y. 1950), permitting *Wilson* to uphold a verdict of guilt as to both rape and incest for the same sexual assault. *Id.* at 897. So, too, with *State v. Shear*, 8 N.W.

*continued on next page...*

## C.

"It would seem a strange rule of law, that a man indicted for incest might escape conviction and secure an acquittal, by satisfying the jury that he overcame the woman by force and violence." *Straub v. State*, 27 Ohio C.C. 50, 55 (Ohio Ct. App. 1904). Yet, this is the rule Douglas champions and *DeGroat* and *Jarvis* endorse. Such a rule is supported neither by the text of NRS 201.180 nor the majority of cases to have interpreted comparable texts. And adopting the rule in *DeGroat* and *Jarvis* would thwart the evident purpose of the prohibition against incest—protecting families and the welfare of children, and preventing genetic mutations. Leigh B. Bienen, *Defining Incest*, 92 Nw. U.L. Rev. 1501, 1536 (1998) ("The goals incorporated within traditional incest statutes include: the orderly regulation of marriage, the prevention of biologically harmful inbreeding . . . and the setting out of punishment for sexual behavior perceived as deviant or exploitative."). Most incest convictions involve sexual contact between an adult and a minor whose legal and psychological capacity to consent *is*, at best, debatable. *See People v. Facey*, 499 N.Y.S. 2d 517, 520 (App. Div. 1986). Making consent an element of incest leaves NRS 201.180 unusable in the context in which its application seems most apt.

"A textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored." Scalia &

---

*...continued*

287 (Wis. 1881): To the extent *Shear* could be read for the proposition that incest and rape were mutually inconsistent, it was abrogated by *Porath v. State*, 63 N.W. 1061, 1064 (Wis. 1895), which held that in a case "founded on a single transaction, a count for incest may be joined with one for rape."

Garner, *supra*, at 63. If the Legislature wanted to make mutual consent an element of incest, it would have been easy to do but it did not; courts should not add things to what a statutory text states or reasonably implies. *Id.* at 93. Absent clear textual instruction otherwise, we decline to presume that a legislature acting in this environment would sanction lack of consent as a defense to incest, particularly when the defense would primarily serve those accused of assaulting the children whose accessibility, due to family ties, is greatest. *See Facey*, 499 N.Y.S. at 520.

### D.

The rule of lenity requires that we liberally interpret an ambiguous criminal law in favor of the accused. *Lucero*, 127 Nev. at ___, 249 P.3d at 1230. But the principle applies only after this court has used every interpretive tool at its disposal and "a reasonable doubt persists." *Moskal v. United States*, 498 U.S. 103, 108 (1990). And given the analysis above, this court is not left with reasonable doubt as to the meaning of NRS 201.180.

### II.

Our reading of NRS 201.180 disables Douglas's remaining arguments. While the jury instructions—to which Douglas did not properly object—did not make mutual consent an element of incest or define "fornication" in terms of "consent," this was not error, plain or otherwise, since the crime of incest does not require mutual consent. *See Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003).

Douglas's double jeopardy challenge also fails. Sexual assault and incest each "contains an element not contained in the other." *Jackson v. State*, 128 Nev. ___, ___, 291 P.3d 1274, 1278 (2012). Incest requires familial relationship, NRS 201.180, while sexual assault does not. NRS 200.366. And sexual assault makes nonconsent of the other party a clear

condition for conviction, NRS 200.366(1), while incest does not. Also, the text of neither statute suggests that a conviction under one precludes a conviction under the other. Thus, Douglas's convictions for both incest and sexual assault did not violate double jeopardy.

We affirm.

_____, J.
Pickering

We concur:

_____, C.J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta